Case No. 07-61057-Civ-COHN/SELTZER

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 07-61057-Civ-COHN/SELTZER

| | |
|---|---|
| In re 21ST CENTURY HOLDING COMPANY SECURITIES LITIGATION | ) ) ) |
| This Document Relates To: | ) ) ) |
| ALL ACTIONS. | ) ) ) |

DECLARATION OF DAVID J. GEORGE IN SUPPORT OF: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS; AND (2) AWARD OF ATTORNEYS' FEES AND EXPENSES

I, DAVID J. GEORGE, declare as follows:

1.      I am a member of the firm Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia"), co-lead counsel along with Glancy Binkow & Goldberg LLP ("Glancy Binkow"), for Lead Plaintiffs and the Class in this action (collectively, "Co-Lead Counsel").[1]

2.      As Co-Lead Counsel, I submit this declaration in support of Lead Plaintiffs' application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for: (a) final approval of the settlement of this action; (b) final approval of the Plan of Allocation of settlement proceeds; and (c) an award of attorneys' fees and expenses.  The Stipulation of Settlement dated as of September 4,

---

[1]      All capitalized terms not defined herein shall have the same meanings as set forth in the Stipulation of Settlement dated as of September 4, 2009.

Case No. 07-61057-Civ-COHN/SELTZER

2009, and filed on September 9, 2009 (the "Stipulation"), provides for payment of $2.24 million in cash in settlement of the Class Litigation, which has been deposited in escrow and is earning interest for the benefit of the Class (the "Settlement Fund"). The Settlement resolves all claims asserted by Lead Plaintiffs and the Class in this action against defendants 21st Century Holding Company ("21st Century" or the "Company"), Edward J. Lawson ("Lawson"), the Company's founder, and former Chairman and Chief Executive Officer ("CEO"), and James Gordon Jennings III ("Jennings"), the Company's former Chief Financial Officer ("CFO"), Chief Accounting Officer and Controller (collectively, "Defendants").

    3.      This declaration sets forth the claims asserted, the principal proceedings to date, the legal services provided by Co-Lead Counsel, and the settlement negotiations. This declaration also demonstrates why the Settlement and Plan of Allocation are fair, reasonable, and adequate, and in the best interests of the Class, and why the application for attorneys' fees and expenses is reasonable and should be approved by the Court.

## I.      PRELIMINARY STATEMENT

    4.      This action was carefully investigated before it was filed and vigorously litigated since its commencement. Co-Lead Counsel thoroughly reviewed and analyzed all publicly available information regarding 21st Century including, but not limited to, its filings with the Securities and Exchange Commission ("SEC"), financial statements, press releases, conference call transcripts, analysts' reports, and notes prepared by securities firms. Co-Lead Counsel retained an experienced investigator and interviewed dozens of witnesses, who provided detailed information concerning 21st Century's operations and management. Considerable resources were devoted to locating and interviewing these witnesses with knowledge of 21st Century's operations, specifically as they

related to 21st Century's loss reserves, loss strengthening program, and reinsurance rates, which were at the center of this lawsuit.

5.     Co-Lead Counsel also consulted with expert consultants on insurance-related actuarial services and accounting matters.  In addition, Co-Lead Counsel consulted with financial and economic consultants regarding the calculation of damages and the movements in 21st Century's stock price.

6.     Further, Co-Lead Counsel thoroughly researched the law pertinent to the claims and defenses asserted, and communicated regularly with Court-appointed Lead Plaintiffs Kivun Mutual Funds Ltd. and International Brotherhood of Electrical Workers Local 98 regarding all of the issues, facts and circumstances of this case, as well as the progress of the litigation.

7.     Lead Plaintiffs have vigorously prosecuted this case since its filing in July 2007, conducting an extensive factual investigation that enabled them to file a highly particularized Consolidated Class Action Complaint for Violations of Federal Securities Laws (the "Consolidated Complaint") on January 22, 2008, which Defendants moved to dismiss on February 25, 2008.

8.     Co-Lead Counsel fully briefed Defendants' motion to dismiss, and on August 20, 2008 the Court heard extensive oral argument.  On November 7, 2008 the Court entered an Order granting in part and denying in part Defendants' motion (the "November 7, 2008 Order"). While the Court's November 7, 2008 Order sustained portions of the Consolidated Complaint's allegations it very significantly narrowed its scope, dismissing two of the three bases for Lead Plaintiffs' claims, and as a result, substantially narrowed the breadth of potential damages.

9.     Following entry of the November 7, 2008 Order, Defendants answered the Consolidated Complaint on January 16, 2009, and Co-Lead Counsel began aggressively pursuing

Case No. 07-61057-Civ-COHN/SELTZER

discovery.  As a result of Co-Lead Counsel's discovery efforts, a considerable number of documents were obtained and reviewed.  In the course of the discovery phase, the parties agreed that it would be mutually beneficial to discuss the possibility of settlement.  The parties conducted extensive settlement negotiations over the course of several months resulting in the Settlement before the Court.

10.     Co-Lead Counsel believe that the Settlement is fair, reasonable, and adequate.  The Settlement is the product of extensive investigation, aggressive litigation and negotiation, and takes into account the significant risks specific to this case particularly in light of the November 7, 2008 Order and the consequent limitations of Lead Plaintiffs' claims.  It was negotiated on both sides by experienced counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses.  The Settlement confers an immediate and substantial benefit on the Class and eliminates the risk of continued litigation under circumstances where a favorable outcome was uncertain.  Co-Lead Counsel respectfully submit that under these circumstances the Settlement is an excellent result, clearly it is in the best interest of the Class and should be approved as fair, reasonable, and adequate.  The Court should also approve the Plan of Allocation to distribute the settlement proceeds and award attorneys' fees in the amount of 25% of the Settlement Fund and out-of-pocket expenses of $75,000 for Co-Lead Counsel's efforts in creating this benefit on behalf of the Class.

## II.     SUMMARY OF LEAD PLAINTIFFS' ALLEGATIONS

11.     This action is brought by Lead Plaintiffs on behalf of themselves and all purchasers of 21st Century common stock between October 3, 2006 and May 3, 2007 (the "Class Period").  Lead Plaintiffs' alleged violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the

Case No. 07-61057-Civ-COHN/SELTZER

"Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC.  15 U.S.C. §§78j(b) and 78t(a); 17 C.F.R. §240.10b-5.

12.     21st Century is a Florida insurance holding company that engages in insurance underwriting, distribution, and claims processing, primarily in the United States.  ¶¶16, 23.[2]  The Company is authorized through its wholly-owned subsidiaries, Federated National Insurance Company ("Federated National") and American Vehicle Insurance Company ("American Vehicle"), to underwrite homeowners' property and casualty insurance, commercial general liability insurance, and personal automobile insurance in various states with various lines of authority.  ¶¶16, 39.  In 2006, Federated National's homeowners and casualty insurance comprised 74.9% of the Company's earnings, revenue, and business.  ¶41.

13.     Beginning August and September 2004, with the arrival of four hurricanes, the state of Florida entered a property insurance crisis, and 21st Century paid out tens of millions of losses as a result.  ¶¶47-48.  Through 2005, the crisis continued and the situation deteriorated further as the Florida coast was hit by four more hurricanes.  ¶48.  As problems deepened, insurance rates increased, and insurance availability became limited as insurers left the state to reduce exposure to the Florida weather.  ¶52.  Throughout this time, Defendants touted that 21st Century would report the highest level of profits in the Company's history by issuing record financial guidance for 2006 and 2007.  ¶¶53, 103.  In fact, Defendants reported 2006 and 2007 guidance would beat the prior years' guidance by 50%.  ¶53.

---

[2]     All "¶__" references herein refer to paragraphs of the Consolidated Complaint unless otherwise indicated.

Case No. 07-61057-Civ-COHN/SELTZER

14.     Shortly thereafter, on February 16, 2007, the Company withdrew its guidance for 2006, yet still reiterated heightened guidance for 2007 of $4.50 per share.  ¶¶7, 123.  The Consolidated Complaint alleged that on May 3, 2007, 21st Century shocked the market and announced disappointing financial results for the first quarter of 2007.  ¶¶9, 149.  21st Century also substantially lowered its previously issued guidance for 2007 - essentially cutting it in half - from $4.50 per share to $2.00 to $2.50 per share.  ¶¶9, 149.  The Company attributed the loss to the rise in prepaid reinsurance premiums, an increase in loss and loss adjustment expenses and the increased cost of reinsurance.  ¶¶150-151.

15.     The Consolidated Complaint alleged this negative news caused the Company's share price to plunge by $8.94 the next day, a drop of more than 44% from the previous day's closing price of $19.11, to close on May 4, 2007, at $11.05 per share on extremely heavy volume. ¶¶11,153.

16.     The Consolidated Complaint's theory of liability can be summarized as relating to three categories of alleged misrepresentations and omissions:  (i) the negative effect on the Company's financial performance and prospects resulting from the hiring of new actuaries who required the Company to substantially increase its inadequate loss reserves; (ii) the increased competition from Citizens Property Insurance Corp. ("Citizens") and Citizen's impact on 21st Century's financial condition; and (iii) the negative impact of increased reinsurance rates.

**A.     Lead Plaintiffs' Allegations Regarding the Hiring of New Actuaries and the Increasing of Inadequate Loss Reserves**

17.     In approximately May of 2006, 21st Century adopted a loss strengthening program as a result of hiring a new actuarial firm.  ¶79.  As alleged in the Consolidated Complaint, the newly hired actuarial firm required that the Company's loss expense and loss adjustment expense to be revised upward.

Case No. 07-61057-Civ-COHN/SELTZER

18.    The Consolidated Complaint alleged Defendants did not disclose this loss strengthening program when it was adopted, and instead continued to report financial results in terms of net profits, as well as balance sheet reserves for expensed losses as reflecting their best current estimates.  ¶84.  Lead Plaintiffs alleged the program was not disclosed until a February 16, 2007 press release attributed the Company's removal of full year 2006 guidance and weaker-than-expected financial results to the loss strengthening program. ¶84.  In the Company's Report on Form 10-K for 2006, filed on March 16, 2007, the Company stated that its liability for losses and loss adjustment expense for claims occurring in prior years had increased by $9.3 million in 2006.  ¶141.  Lastly, the Consolidated Complaint alleged that Defendants never disclosed that the loss strengthening program would continue through at least three quarters of 2007, resulting in a drastic downward revision of guidance for the year.  ¶85.

**B.    Lead Plaintiffs' Allegations Regarding Increased Competition from Citizens and its Impact on the Company's Financial Condition**

19.    According to the Consolidated Complaint, Defendants misinformed the market regarding 21st Century's financial condition by pointing to the Company's rate increases at precisely the same time that a rate decrease was imminent due to the passage of House Bill 1A ("HB 1A"). ¶74.  Specifically, in an effort to induce rate reductions, HB 1A empowered Citizens to compete with private insurers like 21st Century, and also made additional reinsurance available.  ¶¶68-69.

20.    Second, as alleged in the Consolidated Complaint, both Citizens and the Florida Insurance Guarantee Association ("FIGA") were empowered to impose assessments on private insurers like 21st Century.  ¶¶43, 63.  Lead Plaintiffs alleged Defendants failed to properly disclose and/or take into account assessments by Citizens and FIGA and their impact on the Company's financial prospects.  ¶¶54-66.

Case No. 07-61057-Civ-COHN/SELTZER

### C.     Lead Plaintiffs' Allegations Regarding Defendants' Failure to Disclose the Impact of Increased Reinsurance Rates

21.     According to the Consolidated Complaint, Defendants' Class Period statements also falsely reassured the market of 21st Century's reinsurance costs.  For example, Lead Plaintiffs alleged Defendants affirmatively misrepresented that the Company's reinsurance costs were stable during the July 1, 2006 through July 30, 2007 coverage year, and would decline in the following July 1st through June 30th year.  ¶88.  The Consolidated Complaint alleged Defendants did not disclose that the Company's reevaluation of its estimated reinsurance expense, in an environment of increased reinsurance expenses, would result in an increase in the Company's reinsurance expense in the first two quarters of 2007, and made it impossible, when considered in conjunction with other factors, for 21st Century to meet Defendants' guidance.  ¶89.  Thus, Lead Plaintiffs alleged Defendants misled investors that the Company was protected from industry-wide increases in reinsurance at least through mid-year 2007.

### D.     Lead Plaintiffs' Allegations Regarding Defendants' False and Misleading Statements

22.     In sum, the Consolidated Complaint alleged that the false and misleading statements included, among other things, representations falsely omitting that: (i) Defendants had adopted a "loss strengthening program" in the third quarter of 2006 and that it would negatively impact earnings in 2007, making it impossible for the Company to achieve its guidance for 2007; (ii) Defendants were subject to the FIGA's and Citizens' assessments, FIGA was going to need at least another $400 million in emergency assessments, and the financial fallout from the disastrous 2004 and 2005 Florida hurricane seasons would continue to hurt the performance of 21st Century because Citizens was expected to continue to make emergency assessments for years to come; and (iii)

Case No. 07-61057-Civ-COHN/SELTZER

Defendants' reinsurance expense was not level for the July 1st through June 30th coverage year, but was subject to reevaluation on November 30th, and reinsurance costs were expected to increase, not mitigate, going forward.  *See* ¶¶104-148.  Lead Plaintiffs alleged the omission of such information from Defendants' public statements made them false and misleading and caused the price of 21st Century common stock to be artificially inflated throughout the Class Period.  ¶158.  When the truth about 21st Century's financial condition began to emerge, the price of 21st Century common stock declined, and the artificial inflation came out of the stock's price, thereby causing investors' losses. ¶158.

      **E.**     **Lead Plaintiffs' Allegations Regarding the Revelations of Defendants' Fraud**

      23.    Lead Plaintiffs alleged that through the Company's February 16, 2007 and May 3, 2007 announcements, the Company's true financial condition became known.  Specifically, the Consolidated Complaint alleged the Company's February 16, 2007 press release disclosed that the removal of the previously-announced guidance for calendar year 2006 was attributed to the loss strengthening program and FIGA's and Citizens' assessments.  ¶162.  Lead Plaintiffs alleged the existence of the loss strengthening program informed the market that the loss reserves taken prior to the fourth quarter of 2006 were viewed by Company management to be inadequate and that the inadequacy was addressed in the financial reporting for the fourth quarter of 2006.  ¶161.  Further, this specifically informed the market that both the loss strengthening program and the assessments had, in fact, negatively impacted the Company's financial condition existing at the end of 2006. ¶162.  The Consolidated Complaint alleged that this partial revelation of 21st Century's true financial condition, as reflected in a price drop of 10.4% and heavy trading volume of 445,880 shares immediately following the February 16, 2007 press release, demonstrated that these negative

facts had a bearing on 21st Century stock and did in fact cause Lead Plaintiffs and Members of the Class to suffer losses.  ¶163.

24.     Additionally, Lead Plaintiffs alleged the May 3, 2007 press release, which disclosed disappointing earnings for the first quarter of 2007 and a lowering of guidance from $4.50 per share to $2.00 to $2.50 per share for the full year, further revealed the Company's true financial condition to the market.  ¶164.  In particular, the disappointing earnings and lowered guidance reflected in the May 3, 2007 press release disclosed the true effect of the Company's loss strengthening program on the Company's financial results for the first quarter of 2007, as well as the impact that program would have for subsequent quarters in 2007.  ¶165.  The Consolidated Complaint alleged the press release disclosed the true effect the increased reinsurance rates had on the first quarter of 2007 results and the impact such increased rates would have in future quarters of the year, as well as, the true effect HB 1A would have on the Company's revenues by requiring Citizens to pass along any benefit of reduced reinsurance rates to its policyholders in the form of reduced rates.  ¶165.  This additional truth resulted in a strong reaction from the market, which included a price drop of more than 44% and heavy trading volume of more than two million shares.  ¶166.  Lead Plaintiffs alleged this price drop and heavy trading volume demonstrate that the negative facts bearing on 21st Century's stock did in fact cause Lead Plaintiffs and the Class to suffer losses.  ¶166.

## III.   LEAD PLAINTIFFS' PROSECUTION OF THE CASE

### A.   The Filing of the Litigation

25.     Beginning in July 2007, the following actions were filed in the United States District Court for the Southern District of Florida as securities class actions on behalf of purchasers of 21st Century common stock:

Case No. 07-61057-Civ-COHN/SELTZER

| Abbreviated Case Name | Case Number |
|---|---|
| *Kivun Mutual Funds Ltd. v. 21st Century Holding Company, et al.* | 07-61057 |
| *Hummel v. 21st Century Holding Company, et al.* | 07-61107 |

26.     On October 24, 2007, the Court consolidated the cases as *In Re 21st Century Holding Company Securities Litigation*, Case No. 07-61057-CIV-COHN/SELTZER, administratively closing Case No. 07-61107-CIV-COHN and directing all future filings to use the updated caption and to be filed in the Master File (the "Class Litigation").

**B.      Appointment of Lead Plaintiffs**

27.     On November 20, 2007, the Court issued an order appointing the Kivun Group, made up of Kivun Mutual Funds Ltd. and International Brotherhood of Electrical Workers Local 98, as Lead Plaintiffs and approved Lead Plaintiffs' selection of Coughlin Stoia and Glancy Binkow as Co-Lead Counsel.

**C.      Consolidated Complaint**

28.     After their appointment to manage the Class Litigation on behalf of Lead Plaintiffs and the putative class, Co-Lead Counsel continued their thorough investigation of the allegations against Defendants.  This investigation included: (i) a detailed analysis of all of 21st Century's relevant and Class Period SEC filings and press releases; (ii) locating and interviewing dozens of former employees of 21st Century as well as third parties with first-hand knowledge relevant to the Class Litigation; (iii) conferring with a forensic accountant and conducting a detailed examination of 21st Century's Class Period financial statements; (iv) conferring with a damages and materiality consultant; (v) conferring with an actuarial consultant; and (vi) retaining an economist to perform economic and financial analysis.  This extensive investigation allowed Co-Lead Counsel to draft a highly detailed 94-page Consolidated Complaint, which was filed on January 22, 2008.

Case No. 07-61057-Civ-COHN/SELTZER

    **D.    Motion to Dismiss**

    29.    On February 25, 2008, Defendants filed a voluminous motion to dismiss the

Consolidated Complaint, arguing it failed to plead or state a claim under §10(b) or Rule 10b-5

because Defendants' alleged misstatements or omissions of material fact were forward-looking

statements, protected under the Private Securities Litigation Reform Act of 1995's ("PSLRA") Safe

Harbor provision, Lead Plaintiffs failed to adequately plead scienter and loss causation, and Lead

Plaintiffs' confidential witness statements were irrelevant.

    30.    On April 24, 2008, Lead Plaintiffs filed their opposition to Defendants' motion to

dismiss, arguing: (i) Defendants could not avoid liability by re-casting misrepresentations regarding

historical facts as forward-looking statements; (ii) the Consolidated Complaint adequately pleaded

the falsity of Defendants' Class Period statements and included particular facts giving rise to a strong

inference of scienter; (iii) 21st Century was separately liable, and its own scienter was sufficiently

identified; (iv) the Individual Class Defendants were liable as control persons; and (v) the

Consolidated Complaint adequately pleaded loss causation.

    31.    Ultimately, after extensive briefing and oral argument, on November 7, 2008, the

Court entered an Order granting, in part, and denying, in part, Defendants' motion to dismiss,

dismissing two of the three bases of liability alleged by Lead Plaintiffs in support of their claims.

Specifically, the Court held that Lead Plaintiffs "adequately pled Section 10(b) of the Securities

Exchange Act of 1934 and Rule 10(b)-5 violations regarding failure to disclose the loss

strengthening" program but "failed to adequately plead such violations as to statements or omissions

regarding reinsurance, rates and assessments."  November 7, 2008 Order at p. 29.  Accordingly, all

of the alleged false and misleading statements regarding the increased competition from Citizens, the

Case No. 07-61057-Civ-COHN/SELTZER

Citizens and FIGA assessments, the stability of reinsurance costs, and rate increases were found by the Court not to be actionable.  November 7, 2008 Order at pp. 15, 17, 19.  Therefore, the Court sustained only the claims regarding the alleged false and misleading statements with respect to the loss strengthening program, and specifically only with respect to the "corrective disclosure on February 16, 2007 of the loss strengthening which began in the third quarter of 2006."  November 7, 2008 Order at pp. 13, 29.  As a result, the Order significantly limited Lead Plaintiffs' overall potential damages as well as the prior anticipated potential recovery.  Following entry of the November 7, 2008 Order, Lead Plaintiffs chose to stand on the remaining allegations in their Consolidated Complaint, which Defendants answered on January 16, 2009.

       **E.**    **Discovery**

     32.    The Court's November 7, 2008 Order sustaining portions of the Consolidated Complaint ended the PSLRA's discovery stay that had been in effect since the Class Litigation was filed.  In preparation for the time when the discovery stay would be lifted, during the pendency of the motion to dismiss, Co-Lead Counsel consulted with economic, financial and actuarial experts to assist in refining the highly technical issues of the Class Litigation and the potential scope of discovery.  Following the end of the PSLRA discovery stay, Co-Lead Counsel drafted, and on March 27, 2009, began serving Defendants with extensive interrogatories, requests for admissions, and requests for production of documents.  Additionally, Co-Lead Counsel served third party subpoenas *duces tecum* to Butler, Dunlap & Lindquist LLC, DeMeo Young & McGrath, and Merlinos & Associates, Inc., all former actuaries of 21st Century with extensive knowledge regarding 21st Century's financial condition including, loss reserves, liabilities for unpaid losses, loss adjustment

Case No. 07-61057-Civ-COHN/SELTZER

expenses, and proposed rates.  These efforts led to the extensive production of documents relevant to Lead Plaintiffs' claims.

33.     Because many of the documents produced were highly technical and contained substantial amounts of information regarding 21st Century's subsidiaries and financial condition, Co-Lead Counsel consulted with an actuarial expert when reviewing such documents.

### F.     Consultants and Lead Plaintiffs' Damages Analysis

34.     During the Class Litigation, Co-Lead Counsel conferred on many occasions with in-house and third party financial, economic and actuarial consultants, and retained consultants at Crownshield Financial Research LLC to analyze potential recoverable damages and the materiality of the alleged false and misleading statements.  This information helped guide Lead Plaintiffs' settlement negotiations and assisted Lead Plaintiffs in formulating a fair, reasonable, and adequate Plan of Allocation.

### G.     Settlement Negotiations

35.     While the parties engaged in the extensive document discovery discussed above, they agreed that given the status of the case, the potential outcomes, and the potential amounts subject to recovery, it would be mutually beneficial to begin settlement talks. Beginning in April 2009, the parties began actively pursing settlement negotiations which continued for several months.

36.     Prior to agreeing to settlement, Co-Lead Counsel communicated with each of the Lead Plaintiffs regarding the strengths and weaknesses of the Class Litigation, potential outcomes, and acceptable settlement ranges.  After multiple arm's-length communications, discussions, and negotiations between counsel for the parties during which Co-Lead Counsel communicated with each of the Lead Plaintiffs, the Settlement was reached in principal on June 9, 2009.

Case No. 07-61057-Civ-COHN/SELTZER

37.     In view of the extensive investigation Co-Lead Counsel conducted, the review and analysis of the documents obtained, discussions with consultants as well as the discussions that occurred during the settlement negotiations, Co-Lead Counsel were able to identify the issues that were critical to the outcome of the Class Litigation.  Co-Lead Counsel have considered the risks of litigation, the impact of the Court's November 7, 2008 Order on the remaining allegations of the Consolidated Complaint, class certification issues, the likelihood of avoiding summary judgment after additional, extensive discovery, and, if successful, the substantial risk, expense, and length of time to prosecute the Class Litigation through trial and the inevitable subsequent appeals.  Viewed in this light, the Settlement, reached through extensive communications, discussion and negotiations, provided an immediate recovery for the Class, without the potential risk, expense, and delay of continued litigation.  As set forth above, Lead Plaintiffs participated in this analysis and were consulted with and kept apprised concerning the settlement negotiations at all times.

38.     Co-Lead Counsel are actively engaged in complex federal civil litigation, particularly the litigation of securities class actions.  We believe that our reputations as attorneys who are unafraid to zealously carry a meritorious case through the trial and appellate levels gave us a strong position in engaging in settlement negotiations with Defendants, even under the difficult and challenging circumstances presented here.

39.     Co-Lead Counsel respectfully submit that the Settlement represents an excellent result for the Class under the circumstances.  The Settlement will provide Class Members with a benefit now, without the very real risk of no recovery if the Class Litigation were to continue.

Case No. 07-61057-Civ-COHN/SELTZER

**H.      Negotiations and Filing of Stipulation of Settlement**

40.      After an agreement-in-principle to settle the Class Litigation for $2,240,000, plus interest, Co-Lead Counsel undertook to prepare an initial draft of the Stipulation and its exhibits, including a proposed order preliminarily approving the Settlement, a notice of pendency and proposed settlement, a proof of claim and release form, a summary notice for publication, and a proposed final judgment and order of dismissal.  Extensive negotiations between the parties resulted in numerous changes and re-drafts of these documents.  After many hours of discussion and drafting, on September 18, 2009, Lead Plaintiffs filed their Motion for Preliminary Approval of Settlement, and Incorporated Memorandum of Law in Support Thereof, seeking entry of an order: (i) preliminarily approving the proposed settlement of the Class Litigation, as memorialized in the Stipulation; (ii) approving the form of class notice described in the Notice of Pendency and Proposed Settlement of Class and Derivative Actions (the "Notice"), which was attached to the Stipulation; (iii) approving the form of the summary notice, which was attached to the Stipulation; and (iv) scheduling a hearing to determine whether the Settlement should be given final approval and to establish dates for submission of proofs of claim, dissemination of the Notice, and other relevant deadlines.

**I.      Preliminary Approval of the Settlement and Mailing and Publication of Notice of Settlement**

41.      On October 19, 2009, the Court preliminarily approved the terms of the Settlement subject to further consideration at a hearing to be held on January 29, 2010 (the "Settlement Hearing").  The Court directed Co-Lead Counsel to cause the mailing of the Notice and the Proof of Claim and Release form (the "Proof of Claim") to all potential Class Members identifiable with reasonable effort no later than October 29, 2009 (the "Notice Order").  The Notice Order appointed

Case No. 07-61057-Civ-COHN/SELTZER

RSM McGladrey, Inc. ("RSM McGladrey") to serve as Claims Administrator, with responsibility for supervising and administering the notice procedure.

42.     The Court's Notice Order also directed Co-Lead Counsel to cause the Summary Notice to be published in *Investor's Business Daily*, no later than November 2, 2009.

43.     Submitted herewith is the Affidavit of RSM McGladrey, Inc., the Claims Administrator, which attests that Notices have been mailed to over 10,000 potential Class Members, and that Summary Notice was published on November 2, 2009 in *Investor's Business Daily*, as directed by the Court.

44.     The Notice, which was in the form approved by the Court, notified Class Members of the terms of the Settlement, the Plan of Allocation of settlement proceeds, and that Co-Lead Counsel would apply for an award of attorneys' fees of 25% of the Settlement Fund and expenses not to exceed $75,000.

45.     The Notice also provided that any requests for exclusion must be mailed to the Claims Administrator and postmarked no later than December 14, 2009.  To date, the Claims Administrator has not received any requests for exclusion.  In addition, the Notice provided that any objection to the Settlement, the Plan of Allocation of settlement proceeds, or the application for attorneys' fees and expenses had to be filed by December 14, 2009.  To date, and to the knowledge of Co-Lead Counsel, no objections have been filed to the Settlement, the Plan of Allocation of settlement proceeds, or to Co-Lead Counsel's application for attorneys' fees and expenses.

Case No. 07-61057-Civ-COHN/SELTZER

## IV.    FACTORS TO BE CONSIDERED IN SUPPORT OF THE SETTLEMENT

### A.    The Settlement Was Fairly and Aggressively Negotiated by Counsel

46.    As set forth above, the parties negotiated the terms of the Settlement at arm's length, through multiple communications, discussions, and negotiations.  The Settlement was the product of numerous conferences over the course of several months involving Lead Plaintiffs' and Defendants' counsel, and was reached in principle through written correspondence between the parties. Throughout the course of those negotiations, all parties were represented by counsel with extensive experience in securities litigation in general and securities class actions in particular.  The Settlement was the result of an adversarial process designed to produce a fair, reasonable, and adequate compromise.

### B.    Serious Questions of Law and Fact Placed the Outcome of the Class Action in Significant Doubt

47.    Another factor considered in assessing the merits of class action settlements – where serious questions of law and fact exist – supports the conclusion that the Settlement is fair, reasonable, and adequate to the Class.  As in every complex case of this kind, Lead Plaintiffs faced formidable obstacles in establishing their case, both with respect to liability and damages.

#### 1.    Uncertain Proof on Loss Causation and Damages

48.    Defendants argued vigorously in their motion to dismiss and during settlement negotiations that the Consolidated Complaint failed to allege the essential element of loss causation. Defendants were steadfast in taking the position that economic evidence would prove that Lead Plaintiffs would be unable to prove any causal connection between the decline in 21st Century's stock price and 21st Century's alleged misrepresentations.  Specifically, Defendants took the

position that any damages resulting from the alleged false and misleading statements because of the stock price declines were caused by outside market forces.

49.     Lead Plaintiffs' theory on loss causation was that stock price drops during the Class Period were attributable, at least in part, to Defendants' misrepresentations concerning: (i) the Company's negative financial performance and prospects resulting from the hiring of new actuaries who required the Company to substantially increase its inadequate loss reserves; (ii) the increased competition from Citizens, and its impact on 21st Century's financial condition; and (iii) the impact of increased reinsurance rates.

50.     In denying the Defendants' motion to dismiss the Consolidated Complaint, in part, the Court held that Lead Plaintiffs' sufficiently pleaded loss causation only with respect to the February 16, 2007 corrective disclosure regarding the loss strengthening program and not at all with respect to inadequate disclosures concerning Citizens, increased competition, or increased reinsurance rates.

51.     While Lead Plaintiffs and their counsel believe that their theory of loss causation satisfied the standard set out by the Supreme Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), Lead Plaintiffs' ability to prove the essential element of loss causation at trial was uncertain in light of, among other things, the Court's November 7, 2008 Order substantially curtailing the scope of Lead Plaintiffs' loss causation allegations.

52.     The amount of provable damages in the Class Litigation was very much in question. Damages in cases such as these are always difficult to estimate; provable damages may have exceeded Lead Plaintiffs' expert's high estimate, or been less than the low estimate.  At trial, the

Case No. 07-61057-Civ-COHN/SELTZER

damage assessments of Lead Plaintiffs' and Defendants' experts were sure to vary substantially, and in the end, this crucial element at trial would have been reduced to a "battle of the experts."

### 2.     Falsity and Scienter Would Have Been Difficult to Prove at Trial

53.     As is clearly evident from the motion to dismiss and Lead Plaintiffs' opposition to the same, falsity was a hotly contested issue in the Class Litigation, which may have proved difficult to establish at trial.   Defendants took the position that 21st Century's Class Period statements regarding, among other things, the Company's loss reserves, increased competition from Citizens, Citizens and FIGA assessments, stability of reinsurance costs, and rate increases, were made in good faith and that other sources, such as news outlets and market analysts, ensured that the market was fully and accurately informed regarding all aspects of 21st Century's financial condition.  Falsity is an essential element of Lead Plaintiffs' claims, and proving the falsity of any of Defendants' actionable Class Period statements would have been a significant hurdle on a motion for summary judgment and at trial.  In their motion to dismiss, Defendants also argued that Lead Plaintiffs did not allege knowledge of any information known by the Individual Class Defendants that would create an inference of scienter.

54.     Although Co-Lead Counsel believe that they would be able to provide admissible and convincing expert testimony on every essential element of their claims, many obstacles to success lay before them when the parties discussed settlement.  The Class Litigation could have floundered based on Lead Plaintiffs' failure to establish loss causation, falsity, scienter, or other essential elements, such as materiality.  Even if each of these elements was established, the majority of what Lead Plaintiffs alleged were material misstatements and omissions were found by the Court to not be actionable because of these limitations.  Lead Plaintiffs' ability to  prove damages in excess of the

Case No. 07-61057-Civ-COHN/SELTZER

settlement amount of $2,240,000 was very much in doubt.  The uncertainty as to Lead Plaintiffs'

ability to prove liability and damages above the settlement amount strongly supports the settlement

in this case.

### C.    The Judgment of the Parties that the Settlement is Fair and Reasonable Provides Additional Support for Approval of the Settlement

55.    Another factor in considering whether to approve class action settlements is the

judgment of the parties that the settlement is fair and reasonable.  As outlined above, the Settlement

was the product of arm's-length communications, discussions, and negotiations between adversaries

with significant experience in securities class action litigation.

56.    Co-Lead Counsel strongly believe that the Settlement amount of $2,240,000

represents an excellent resolution for the Class.  As outlined above, the Settlement is fair, reasonable,

and adequate in all respects and should be approved by the Court.

57.    Furthermore, copies of the Notice have been mailed to over 10,000 potential Class

Members.  To date, Co-Lead Counsel are not aware of any objections to the Settlement, the Plan of

Allocation of settlement proceeds, or the application for attorneys' fees and expenses.

## V.    THE PLAN OF ALLOCATION

58.    Pursuant to the Notice Order and as set forth in the Notice, all Class Members who

wish to participate in the distribution of the Net Settlement Fund must submit a proper Proof of

Claim form.  As provided in the Stipulation, after deducting all appropriate taxes, administrative

costs, attorneys' fees, and expenses, the Net Settlement Fund shall be distributed according to the

Plan of Allocation.  The Plan of Allocation is enumerated on pages 4 to 5 of the Notice.

Case No. 07-61057-Civ-COHN/SELTZER

59.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Class Members who submit valid Proof of Claim forms.

60.    The Proposed Plan of Allocation provides:

(a)    For shares of 21st Century common stock purchased on October 3, 2006 through February 15, 2007, the claim per share shall be as follows:

(i)    If sold on or before February 15, 2007, the claim per share is zero.

(ii)    If sold between February 16, 2007 and May 3, 2007, the claim per share shall be the lesser of (a) $2.21 (February 16, 2007 Price Decline), or (b) the difference between the purchase price and the selling price.

(iii)    If held at the close of trading on May 3, 2007 and sold on or before August 1, 2007, the claim per share shall be the lesser of (a) $11.15 (February 16, 2007 & May 4, 2007 Price Declines), or (b) the difference between the purchase price and the selling price, or (c) the difference between the purchase price per share and the average closing price per share up to the date of sale as set forth in the table [included in the Notice].

(iv)    If retained, or sold, on or after August 2, 2007, the claim per share shall be the lesser of (a) $11.15 (February 16, 2007 & May 4, 2007 Price Declines), or (b) the difference between the purchase price per share and $10.98 per share.

(b)    For shares of 21st Century common stock purchased on February 16, 2007 through May 3, 2007, the claim per share shall be as follows:

(i)    If sold on or before May 3, 2007, the claim per share is zero.

(ii)    If held at the close of trading on May 3, 2007 and sold on or before August 1, 2007, the claim per share shall be the lesser of: (a) $8.94 (May 4, 2007 Price Decline), or

Case No. 07-61057-Civ-COHN/SELTZER

(b) the difference between the purchase price and the selling price, or (c) the difference between the purchase price per share and the average closing price per share up to the date of sale as set forth in the table [included in the Notice].

(iii)    If retained, or sold, on or after August 2, 2007, the claim per share shall be the lesser of: (a) $8.94 (May 4, 2007 Price Decline), or (b) the difference between the purchase price per share and $10.98 per share.

61.    The payment received by the Class will reflect their pro rata share of the Net Settlement Fund.  Depending on the number of eligible shares that participate in the class action settlement and when those shares were purchased and sold, the estimated average recovery will be approximately $0.47 for each share before deduction of Court-approved fees and expenses.  The number of claimants who send in claims varies widely from case to case.  If fewer than anticipated Class Members send in claim forms, the Class could receive more money.

62.    Lead Plaintiffs formulated this proposed Plan of Allocation after consulting counsel's in-house economic specialist and with Lead Plaintiffs' materiality and damages consultant in order to calculate a fair method to divide the Net Settlement Fund for distribution among Class Members. The proposed Plan of Allocation attempts to eliminate the effects of market forces unrelated to the alleged misrepresentations and omissions as well as simplify claims administration with the attendant reduced cost to the Class.  Thus, the proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of this Settlement among Class Members, in view of the relative alleged damages suffered by purchasers of 21st Century common stock during different time periods.

## VI.    FACTORS TO BE CONSIDERED IN SUPPORT OF THE REQUESTED ATTORNEYS' FEE AWARD

63.    The Notice sent to Class Members provides that Co-Lead Counsel may apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund, plus expenses of up to $75,000. As set forth in Co-Lead Counsel's Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses, Lead Plaintiffs are requesting a fee of 25% (*i.e.*, $560,000) of the Settlement Fund and reimbursement of expenses totaling $75,000.   As discussed in the accompanying memorandum of law, the Eleventh Circuit has held that the requested fee falls within the range of reasonable fees in common fund cases.

64.    Co-Lead Counsel's efforts, which achieved a very favorable result for the Class, came with great risk and substantial expenses to themselves over the two years the Class Litigation has been pending.  They were unwavering in their dedication to the interests of the Class and their investment of the time and resources necessary to bring the Class Litigation to a successful conclusion.  The requested fee is reasonable based on the quality of Co-Lead Counsel's work and the substantial benefit obtained for Class Members.  In addition, the requested fee represents about 55% of the time invested in the Class Litigation by Co-Lead Counsel.

65.    Co-Lead Counsel's expenses incurred in the prosecution of the Class Litigation are set forth in the accompanying declarations of Co-Lead Counsel.  Co-Lead Counsel have averred that the expenses are reflected in the books and records maintained by their firms and are an accurate recording of the expenses incurred.  In total, Co-Lead Counsel have incurred reimbursable expenses in the amount of $104,488.99.  Included in this amount are the costs of outside consultants in the areas of materiality, damages, and financial and actuarial analysis.  Co-Lead Counsel respectfully

submit that all of these expenses are reasonable and were necessarily incurred in connection with the prosecution of the Class Litigation.

### A.      Extent of Litigation

66.      As described above, this case was settled only after Co-Lead Counsel had conducted an extensive investigation into the Class's claims, interviewed multiple material witnesses, thoroughly researched the facts and law applicable to the Class's claims and Defendants' defenses, prepared and filed a fact-specific, detailed Consolidated Complaint specifying Defendants' alleged violations of the federal securities laws, successfully opposed Defendants' motion to dismiss the Consolidated Complaint, engaged in fact discovery, and engaged in arm's-length settlement communications, discussions, and negotiations with Defendants.  Co-Lead Counsel's tireless prosecution of this case over the course of more than two years weighs strongly in favor of the fee award Co-Lead Counsel requests.

### B.      The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk, Contingent Securities Cases

67.      The Class Litigation was undertaken by Co-Lead Counsel on a wholly contingent basis.  From the outset, Co-Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the investment of time and money the case would require.  In undertaking that responsibility, Co-Lead Counsel were obligated to assure that sufficient attorney resources were dedicated to the prosecution of the Class Litigation and that funds were available to compensate staff and to pay for the considerable out-of-pocket costs that a case such as this entails.

68.      Courts have repeatedly held that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and

Case No. 07-61057-Civ-COHN/SELTZER

directors of public companies.  Vigorous private enforcement of the federal securities laws can only occur if private plaintiffs can obtain parity in representation with that available to large corporate interests.  If this important public policy is to be carried out, the courts must award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

### C.       Standing and Expertise of Co-Lead Counsel

69.       The standing and expertise of Co-Lead Counsel, Coughlin Stoia and Glancy Binkow, are described in the exhibits attached to the declarations submitted herewith.  Coughlin Stoia is made up of the most experienced and skilled practitioners in the securities litigation field.  Similarly, Glancy Binkow is equally versed and has many years of experience in securities litigations as well.

### D.       Standing and Caliber of Opposition Counsel

70.       The Defendants in the Class Litigation are represented by Squire, Sanders & Dempsey LLP, one of the finest defense firms in the country, with substantial experience in the defense of complex securities litigation.  In the face of this formidable opposition, Co-Lead Counsel developed their case so as to persuade the Defendants to settle the case on a basis favorable to the Class.

### E.       The Fee Requested is Consistent with Fees Awarded in Comparable Cases in this Circuit

71.       Finally, the fee requested by Co-Lead Counsel – 25% of the Settlement Fund – is consistent with fees awarded in comparable cases by this Court and courts in this Circuit.  *See, e.g., In re Cryo-Cell Int'l, Inc. Sec. Litig.*, No. 8:03-CV-1011-T-17-EAJ (M.D. Fla. Feb. 25, 2005) (Judge Kovachevich) (awarding 30% fee in securities class action); *Underwood v. Lampert*, No. 1:02-cv-21154-CMA (S.D. Fla. Jan. 29, 2007) (Judge Altonaga) (awarding 30% fee from settlement fund in

Case No. 07-61057-Civ-COHN/SELTZER

securities class action); *Bielanski v. Salberg & Co., P.A.*, No. 03-80596-CIV-Zloch (S.D. Fla. July 30, 2004) (finding 30% fee award in securities class action to be fair and reasonable); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming award of 33-1/3% recovery); *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) (Judge Nimmons) (collecting cases and approving fee of 30% in securities class action).  This factor, as well, supports the fee requested by Co-Lead Counsel.

## VII.    CONCLUSION

For the reasons set forth above and in the accompanying Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds, and Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses, I respectfully submit that: (i) the Settlement is fair, reasonable, and adequate and should be approved; (ii) the Plan of Allocation of settlement proceeds represents a fair method for distribution of the Net Settlement Fund among Class Members and should also be approved; and (iii) the application for attorneys' fees and expenses should be granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 7th day of December, 2009, at Boca Raton, Florida.

s/ David J. George
_____
DAVID J. GEORGE

S:\Settlement\21st Century.set\DECL GEORGE 00063401.doc

- 27 -